In the Matter of the Estate of WILLIAM WELLINGTON, Deceased.

Surrogate's Court, New York County, January 10, 1935.

*Joseph A. Cox*, for the public administrator.

*Leo T. McCauley*, Consul General of the Irish Free State in New York city, in person.

*Blum & Jolles* [*Joseph Blum* of counsel], for the Polish Consul General in New York city, intervening as *amicus curiæ*.

*Paul E. Tuthill*, for the Transatlantic Estates and Credit Company and Joseph Woerndle.

*James O. Trybom*, for Annie Perney.

FOLEY, S.   This is an accounting proceeding.   Objections have been filed to the account, nominally, by Patrick Boles, an uncle and sole next of kin of the decedent, but actually by his attorney in fact, the Transatlantic Estates and Credit Company.   The purpose of these objections is to enforce the payment of the balance of the

estate due the sole next of kin to the corporation as his attorney in fact. The Consul General of the Irish Free State has appeared, claiming to represent the sole next of kin as a citizen and national of that country. He requests that transmission of the funds be made through him instead of through the corporation.

It has been established beyond dispute that the status and relationship of Patrick Boles as the sole next of kin would have been proven without the intervention of the attorney in fact and that the balance of the estate would have been paid to him under the decree of this court.

The public administrator and the Consul General contend that the power of attorney and agreement of compensation procured by the corporation are illegal and void because they were procured by a corporation engaged in the practice of law and engaged in furnishing attorneys and counsel in violation of section 280 of the Penal Law.

The Transatlantic Estates and Credit Company was originally a New York corporation. It was formed by one Joseph Woerndle, an attorney admitted to practice in the State of Oregon. Woerndle came to New York city ten years ago. He sought admission to the bar in four successive applications to the Appellate Division. First Department, between the years 1925 and 1930. Each application was denied by that court. In 1924 he formed the corporation for the general purpose of carrying on the business of "collecting and cashing inheritances and legacies." Woerndle acted as president of the company and one Paul E. Schwabe was its secretary. Schwabe eventually left the business in 1930 and branched out for himself in a business of the same nature. Searchers were employed by the company to examine the records of the various Surrogates' Courts to ascertain the names of next of kin and legatees residing in other States of the United States or in foreign countries. Correspondents were maintained in foreign countries who, after cabled notification of the names of prospective beneficiaries, solicited them to retain the Transatlantic Corporation as attorney in fact under powers of attorney. These powers of attorney ran to the company and to Woerndle. In certain cases agreements of compensation were obtained fixing a definite rate of compensation to be paid to the company. In other cases no rate of compensation was fixed and the amount was left open for whatever rate the company or Woerndle decided to charge.

Evidence has been developed in this proceeding as to the extent of the operations of Woerndle and his company. In a period of ten years approximately four hundred powers of attorney were filed in three hundred estates in the Surrogates' Courts of the counties

within the metropolitan district. In numerous other estates, the number of which have not been possible of accurate ascertainment, powers of attorney were procured but not recorded and Woerndle and lawyers representing him participated in the administration of the estates and in the collection of legacies or distributive shares. The rate of compensation charged by the company appears to have varied from ten per cent to fifty per cent of the share of the beneficiary. In many cases Woerndle, representing the corporation, handled all the legal proceedings and the preparation of the necessary papers, waivers, releases necessary to obtain collection of the funds. In other cases the corporation retained New York lawyers to represent it in the administration of the estate. The nature of the work, as shown by the evidence, plainly establishes that this corporation practiced law in violation of section 280 of the Penal Law. In the year 1928 the committee on unlawful practice of the law of the New York County Lawyers' Association began an investigation of the activities of the corporation. As a result of this investigation they found a " flagrant violation " of that section of the Penal Law and recommended the initiation of a proceeding by the Attorney-General for the cancellation of its charter. In order to avoid a compulsory dissolution Woerndle, the president of the corporation, and Paul E. Tuthill, its attorney, agreed to a voluntary dissolution and " the prompt winding up of its business with the utmost speed and dispatch." This agreement is evidenced by a letter of Woerndle with a notation by Tuthill, which is dated September 30, 1929, addressed to the New York County Lawyers' Association. The New York corporation was actually dissolved in February, 1930, but the promise of an abandonment of the business by Woerndle and his attorney Tuthill was a mere sham and pretense, for within a few months a New Jersey corporation of the same name was formed which carried on the same business in the same flagrant manner. Woerndle and his corporation simply transferred their place of business from New York to New Jersey. The same method of searching, solicitation and the collection of exorbitant and unreasonable amounts has been continued for the past four years in New York State. Tuthill testified that since 1930 he has represented the Transatlantic Estates or Woerndle in approximately forty-nine estates in this court under powers of attorney made by foreign heirs to the New Jersey corporation or to Woerndle. His activities since the dissolution of the New York corporation have been no different from his representation of the New York corporation in the preceding years. Tuthill received out of the compensation paid to the corporation a fixed percentage for his own services.

In the present estate it has been stated that the agreement of compensation of the Transatlantic Estates is fifteen per cent of the share of the interest of the sole beneficiary in the estate. Payment of any percentage whatsoever would be an unjustified and unnecessary deduction from the interest of the beneficiary in the estate. Discussion of an almost similar situation is set forth in my decision in *Matter of Lynch* (154 Misc. 260), and the observations therein stated as to the detrimental effects of a system which permits the solicitation of known heirs apply here. In that case a layman solicited the representation of foreign heirs and was held to be engaged in the business of furnishing attorneys and counsel. In the present case I hold that the Transatlantic Estates and Credit Company was engaged in the practice of law, and for that reason any agreements obtained by it to represent foreign heirs, and any powers of attorney procured by it, are illegal and void. " A corporation can neither practice law nor hire lawyers to carry on the business of practicing law " (*Matter of Co-operative Law Co.*, 198 N. Y. 479). In the latter case Judge VANN further said: " The bar, which is an institution of the highest usefulness and standing, would be degraded if even its humblest member became subject to the orders of a money-making corporation engaged not in conducting litigation for itself, but in the business of conducting litigation for others." To these general observations may be added the fact that section 280 of the Penal Law has provided a specific prohibition against corporations practicing law.

At the close of the pending proceeding and after the development of the facts before me, Tuthill, as attorney for the Transatlantic Estates, endeavored to withdraw the claim of the company for compensation and also attempted to withdraw from the proceeding as attorney. Under all the circumstances in the case, I am unwilling to accept any withdrawal by him or his client which would prevent a complete determination upon the merits as to the invalidity of the actions of the Transatlantic Estates Company. In addition, his own conduct in representing the company in numerous estates over a period of years, and particularly his acceptance of approximately fifty retainers from the New Jersey corporation after his promise in 1929 to the New York County Lawyers' Association to see that the activities of Woerndle through a corporation would cease in New York, require the censure of the court.

Submit decree on notice directing the transmission of the entire share of Patrick Boles to him through the Consul General of the Irish Free State, overruling the objections of the Transatlantic Estates and Credit Company, and settling the account accordingly.