Essex County Circuit Court.

MATTHEW J. READY, v. NATIONAL STATE BANK OF NEW-
ARK, NEW JERSEY, EXECUTOR UNDER THE LAST
WILL AND TESTAMENT OF THOMAS S. HENRY, DE-
CEASED.

Decided June 20, 1935.

Before Joseph L. Smith, C. C. J., and a jury.

For the plaintiff, *Carl Abruzzese* and *William Abruzzese*
(*Carl Abruzzese*).

For the defendant, *Harrison & Roche* (*John J. Mc-
Donough*).

For the three residuary legatees, *William K. Flanagan.*

The Court. This is an action instituted by the plaintiff,
Mr. Matthew J. Ready, against the National State Bank of
Newark, as executor under the last will and testament of
Thomas S. Henry, deceased. The second count of the com-
plaint is waived.

I now have before me for consideration a motion for the
direction of a verdict in favor of the defendant. The com-
plaint alleges that on or about June 28th, 1928, the plaintiff
and the late Judge Henry, a gentleman of the old school and
a man of advanced years at the time of his death on March
17th, 1934, entered into an agreement to represent one
Frederick J. Brokaw in a certain condemnation proceeding
instituted by the Essex county park commission to obtain for

the said Frederick J. Brokaw as much as the lands and premises sought to be condemned were reasonably worth; that the said Thomas S. Henry was to receive and charge Brokaw ten per cent. of any and all sums of money that might be awarded to the said Brokaw in said proceedings as and for fees and services in connection therewith; that Mr. Ready was to assist Judge Henry in the preparation of all data and memoranda, facts and law, touching on the trial of the issues raised in said condemnation proceedings and that Judge Henry agreed and promised to pay Ready one-half of any and all sums received by him from Mr. Brokaw. The complaint alleges that Judge Henry received $6,000 for his services, and the complaint further alleges that Mr. Ready performed all of the services in accordance with the said agreement, whereby the plaintiff claims that he is entitled to receive $3,000, less $100 that Judge Henry had paid, or a balance of $2,900, with interest from January 17th, 1929.

Judge Henry died, as I have indicated, on March 17th, 1934, and the plaintiff presented a claim to the executor of the estate on July 13th, 1934, which was disallowed on July 20th, 1934, and on August 19th, 1934, this action now before us was instituted.

The court has considered the grounds urged in behalf of the motion for the direction of a verdict. The proof briefly in the case indicates that Mrs. Brokaw, the wife of Mr. Frederick J. Brokaw, purchased a dress from the sister-in-law of Mr. Ready, Miss Bessie Taggart, and that Mrs. Brokaw discussed with Miss Taggart at that time that their farm property in Bloomfield was about to be condemned and taken from them by the Essex county park commission for public improvement. Subsequently, Miss Taggart's brother-in-law, Mr. Ready, accompanied by members of his family, called to see Mr. and Mrs. Brokaw, and at that time Mr. Ready suggested to Mr. Brokaw as a counsel to represent him the late Judge Henry. Mr. Chandler W. Riker, who was formerly the counselor of Mr. Brokaw, was then deceased. After consideration by Mr. Brokaw of the suggestion by Mr. Ready, Mr. Brokaw subsequently called to see the late Judge Henry and retained him to represent him.

The plaintiff's contention is that he had an agreement with Judge Henry to receive fifty per cent. or one-half of any and all sums received by Judge Henry from Mr. Brokaw.

The testimony indicated that Mr. Ready had secured this case and that Judge Henry was to act as counsel for Mr. Brokaw. There is further evidence to indicate that Judge Henry acknowledged that Mr. Ready had referred Mr. Brokaw to him as a client and that the judge had expressed his appreciation and gratitude to Mr. Ready for having recommended him in this particular case, and that there was some mention between Judge Henry and Mr. Ready that Mr. Ready was to receive from Judge Henry fifty per cent. of his fee.

I cannot help but strongly reach the conclusion that on the grounds urged for the direction of a verdict that the court should grant such motion.

From the earliest days of both the Roman and English law, and certainly from the days of Richard I, which seems to be the first reign that the courts have any record of as to the beginning of the English jurisprudence, I am constrained to find that there has always been a very jealous and zealous position on the part of the bench and the bar to preserve to the bar that degree of dignity and self-restraint in the manner of the administration of justice and the obligations resting upon its members to so administer the law that the question of the compensation that either in the old days a barrister and advocate, and in our state an attorney and counselor, are entitled to receive should be so bound by the ethics and the high standing in the principles of those that have gone before us that it is inconceivable to me to realize or to appreciate that in these days the law would permit, in the language of the street, "chiseling" on the part of a layman of the fee to be paid to a member of the legal profession. Such an agreement certainly to my mind, if in fact there is such an agreement proven or the performance of such an agreement by the plaintiff, is clearly against public policy and against, as I have indicated, those high ideals and principles that have been in the heart and the soul of the law since its inception.

The practice of permitting a layman, if such practice legally would have any sanction, to bring to a member of the bar clients for the purpose of rendering legal services, out of which compensation to the practitioner the layman would be entitled to participate in any degree could not help but result in an humbling of our profession that would never be able to secure to the litigants the full protection of the rights to which they are entitled. It would break down in my humble opinion and destroy the very practice of a profession and it would result, as the facts in this case to my mind indicate, in a broad form of ambulance chasing of the worst character, and necessarily result in the profession becoming not alone a business, but would eventually find the practice of the law run by laymen, controlled by them, and, in fact, if not in law, practiced by them.

I have also considered the several other grounds urged on behalf of the defendant for the direction of a verdict, and I am therefore constrained on all the grounds urged to grant the motion for the direction of a verdict in favor of the defendant, and I will grant an exception.