In the Matter of the Estate of WILLIAM WELLINGTON, Deceased.

Surrogate's Court, New York County, August 13, 1936.

*Joseph A. Cox*, for the public administrator.

*Ralph Montgomery Arkush*, for the petitioner, Paul E. Tuthill, attorney for Transatlantic Estates and Credit Company in original proceeding.

FOLEY, S. This is an application to modify the written decision of the surrogate filed by him pursuant to section 71 of the Surrogate's Court Act. (*Matter of Wellington*, 154 Misc. 271.) The decision was rendered in a contested accounting proceeding involving the validity of a power of attorney executed by the sole next of kin of the decedent. The issue as to its validity was created by the objections of the Transatlantic Estates and Credit Company, as attorney in fact, which was represented as attorney at law, by the petitioner in the present application. The objections alleged that the account was erroneous in that it failed to recognize and acknowledge the Transatlantic Estates and Credit Company as the duly appointed and constituted attorney in fact of the next of kin. The public administrator had given notice in his petition for the judicial settlement of his account, that it was his intention to make distribution through the Consul General of the Irish Free State, where the next of kin resided, unless he was otherwise directed by the surrogate. The public administrator contended that the power of attorney was illegal and void because it violated the provisions of section 280 of the Penal Law which prohibit a corporation to engage in the practice of law or to furnish attorneys or counsel or to render legal services of any kind in actions or proceedings. (*United States Title Guaranty Co.* v. *Brown*, 86 Misc. 287, KELLY, J.;

affd., 166 App. Div. 688; affd., 217 N. Y. 628; *Matter of Pace*, 170 App. Div. 818; *Meisel & Co.* v. *Nat. Jewelers Board of Trade*, 90 Misc. 19, SHEARN, J.; *Matter of Co-Operative Law Company,* 198 N. Y. 479.) In the *United States Title Guaranty Case* (*supra*), Justice KELLY (later Presiding Justice of the Appellate Division, Second Department), at Special Term, in discussing the effect of agreements between the plaintiff, a corporation engaged in the practice of law, and its clients, and a separate agreement between the corporation and its attorney, the defendant, said: " The agreement of the plaintiff and defendant and the plaintiff's agreements with the property owners seem to me to be flagrant violations of the law, and before a court of equity no skillfully framed wording of a corporate charter can be allowed to cover the wrongs or to make them legal." (86 Misc. 287, at p. 290.)

The wide extent of the jurisdiction of the Surrogate's Court in law and in equity in accounting proceedings was declared by the Court of Appeals in the opinion of Chief Justice CARDOZO in *Matter of Raymond* v. *Davis* (248 N. Y. 67). In that opinion he cited the statutory basis of that jurisdiction which is found in section 40 of the Surrogate's Court Act, the pertinent part of which reads as follows: " A Surrogate's Court has jurisdiction ' to administer justice in all matters relating to the affairs of decedents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding, or is brought in by supplemental citation, as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires.' "

Pursuant to that jurisdiction and after the trial of the issues raised by the objections of the Transatlantic Estates and Credit Company, the surrogate rendered his decision in writing determining the issues. In that decision it was determined that the power of attorney was illegal and void because it violated the provisions of section 280 of the Penal Law. That decision accurately set forth the facts. The discussion of these facts and the inference of the surrogate were strictly confined to the issues involved in the proceeding and to the documentary and oral evidence adduced on the hearings.

The Surrogate's Court is a constitutional court of the State and the surrogate as a judicial officer possesses the same inherent power as the justices of other courts to comment on the testimony

or the conduct of a party, a witness or an attorney appearing before him. Numerous reported decisions in the Federal courts and the courts of this State contain comments upon the conduct of attorneys involved in transactions or in an action or in a proceeding and sustain the power, right and duty of a court to comment upon such conduct. The petitioner was not only the attorney for the corporation, and was a witness upon the trial and according to his own testimony " was the only New York connection of the New Jersey corporation," the New York corporation of similar name having been dissolved and a New Jersey corporation, as stated in my original decision, having transacted the same kind of business. Moreover, the decision of the surrogate was in great part based upon the unequivocal admissions upon the witness stand of the petitioner as the attorney for the Transatlantic Estates and Credit Company. The final decree entered upon the decision was made on February 9, 1935. No appeal was taken from any part of that decree. The decree and the decision of the surrogate thus stood unquestioned for a period of sixteen months. The decision of the surrogate was based upon the evidence and the law of this State as set forth by the Appellate Division of the First Department in *Matter of Pace* (170 App. Div. 818), " that it is unlawful for a corporation, whether domestic or foreign, to practice law in this State, and that any member of our bar who assists a corporation in violating the law in this respect is himself guilty of wrongdoing." The Appellate Division of the Second Department had likewise characterized the position of a lawyer who represented a corporation which had violated the provisions of section 280 of the Penal Law, in its affirmance of the determination of Justice KELLY in *United States Title Guaranty Co.* v. *Brown* (166 App. Div. 688, affg. 86 Misc. 287, which, on appeal from the Appellate Division, was affirmed, without opinion, 217 N. Y. 628). Presiding Justice JENKS (at p. 691), there referring to the attorney-defendant, stated: " True, the statute is not aimed at him directly, for he is an individual permitted to practice law. But in that practice he accepted a retainer from the plaintiff to perform the illegal contracts which the plaintiff had made with third persons. And in so far as he performed, he rendered himself *particeps criminis*. (*Arnot* v. *Pittston & Elmira Coal Co.*, 68 N. Y. 558, 567; Penal Law, § 27.) "

In the face of these emphatic statements of the law by two departments of the Appellate Division, which were so pertinent to the evidence and the issues in this case, it is unthinkable that the court was without power to characterize the conduct of the attorney who represented the corporation, which had been found to have violated the law, especially where it appears that it pre-

viously had agreed to discontinue its practices and business in New York after an investigation by a committee of the New York County Lawyers' Association, dissolved its corporate existence in this State and renewed its activities here under the guise of a corporation formed for similar purposes and under a similar name in the State of New Jersey, and where the petitioner admitted under oath at the original trial herein that he represented both corporations in certain of these transactions.

During the course of the trial and upon the third day, the petitioner as the attorney for the Transatlantic Estates and Credit Company endeavored to withdraw the objections and the claim of the company for compensation. He requested, however, that the surrogate make an allowance to him in his discretion for services rendered by him. The trial was directed to be continued by the court. The petitioner continued in the proceeding until the close of the taking of testimony and on the fourth day of the trial, at the very end of the case, attempted to withdraw from the proceeding as attorney for the corporation.

The public administrator had requested a determination as to whether the distributive share of the next of kin should be transmitted through the Consul representing his country or through the Transatlantic Estates and Credit Company, the corporation named as the attorney in fact under the power. The surrogate in the exercise of his discretion refused to permit the withdrawal of the objections or to countenance the withdrawal by the attorney. The court proceeded to determine upon the merits the issue as to the validity of the power of attorney, and to make direction as to the manner of transmission of the balance of the estate. The trial of the case involved a matter of serious public interest. (*Winans* v. *Winans*, 124 N. Y. 140.) In my original decision I pointed out the widespread activities of the corporation in soliciting and procuring very many powers of attorneys from heirs in various parts of the world and exacting exorbitant and unreasonable fees. It should be noted that many of these beneficiaries did not need any person to represent them in the collection of their shares of estates but would have been paid in the regular course of administration. The petitioner upon the present application represented the corporation as its attorney when occasions arose for an appearance in judicial proceedings. A question of public policy was, therefore, presented and one which not only affected the rights of the immediate parties involved, but also the protection of beneficiaries of estates in this court generally. Legal basis, therefore, existed for the exercise of the discretion of the court in refusing to consent to a withdrawal of the objections or of the appearance of the attorney for the cor-

poration. (*Matter of Lasak,* 131 N. Y. 624; *Carleton* v. *Darcy,* 75 id. 375; *Matter of Waverly Waterworks Co.,* 85 id. 479; *Winans* v. *Winans,* 124 id. 140; *Grana* v. *Metropolitan Life Insurance Co.,* 237 App. Div. 54.) It would have been inequitable to the persons interested in the proceeding and prejudicial to their rights to have permitted a withdrawal. The power of attorney had been filed and recorded in this court. Its validity or invalidity had to be adjudicated. The public administrator, the Consul General of a foreign State acting under his treaty rights, and the beneficiary himself were entitled to a determination upon the merits and to a decree which would forever dispose of the regularity and finality of the distribution of the estate. The decision made that determination.

The allegations of the petitioner in his moving papers furnish no basis or legal ground for any change in the decision of the surrogate. He has not shown any mistake in any statement of fact or any other error in that decision. The pendency of the disciplinary proceeding brought against the petitioner has no relevancy, materiality or competency to the disposition of the present application. It should be stated, however, that the contention of the petitioner upon the present application that the original decision of the surrogate constitutes an "insuperable obstacle" to his exoneration, is an unwarranted reflection upon the independence of judgment and the ability of the justices of the Appellate Division, First Department, to decide the disciplinary proceeding upon the evidence in the record before that court.

Submit order on notice denying the application accordingly.