[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 460 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 461 
On December 4, 1934, Margaret McEvoy of Trenton, New Jersey, died testate. The plaintiff, Richard J. Carey, was nominated executor, and on December 17, 1934, he duly qualified as such in the Mercer County Surrogate's Court.
The decedent, by her will, disposed of the major portion of her estate to a large number of her next of kin residing in various parts of the British Empire. The executor's petition for probate properly designated and also exposed the names and addresses of all of the surviving beneficiaries of the decedent's estate. One of the beneficiaries predeceased the decedent, leaving three children entitled to his share. Other beneficiaries who survived the decedent have since died and personal representatives to administer their estates have been appointed. A small portion of the estate was left by the decedent to other next of kin, residents of this country, who are not parties to these proceedings. On or about January 19, 1935, all of the foreign beneficiaries with the exception of the three children of the beneficiary who had predeceased the decedent executed powers of attorney to the defendant Lhoe O. Thieme. By the terms of each, that defendant was authorized inter alia to represent and appear for them in all proceedings in the decedent's estate, to accept service of process for them, to retain and discharge on their behalf attorneys and counsel of his own choosing, to collect and receipt for their respective shares of the estate, to institute, conduct or defend all litigation concerning the subject matter of such powers, to advance moneys for any and all cognate purposes and to reimburse himself for his services and disbursements out of the funds coming into his hands from the estate. The instruments also purported to give him a first and prior lien upon the respective shares of the beneficiaries, to defray his charges and all advances, costs, and expenditures made by him, and by their terms the powers thus conferred were expressly declared to be irrevocable. Said *Page 462 
powers were duly filed and recorded in the Mercer County Surrogate's Office.
On June 21, 1937, the plaintiff, after the allowance of his first intermediate account as executor of the testatrix's estate, paid to the defendant Thieme, as attorney in fact for said foreign beneficiaries, the sum of $4,075, comprising one-half of the total amounts of the pecuniary bequests payable to them by the terms of the will of the testatrix. Since then, the defendant Thieme has failed and refused to pay to the surviving beneficiaries and the representatives of beneficiaries now deceased, or any of them, any part of their respective shares of such sum other than three small payments totaling not more than $184. Thieme asserts that such disbursements amount to $275.70. Nevertheless, repeated requests addressed to Thieme to account for the balance of the moneys paid over to him have been unproductive.
From and after August 1938 all of the now living beneficiaries and the representatives of decedent's beneficiaries (with the exception of Henry Morrison, executor of the estate of Mary McEvoy Coughlin Killen, who died on April 3, 1936) executed written instruments evidencing the revocation of the powers of attorney theretofore executed by them in favor of Thieme. These instruments of revocation were likewise recorded in the Mercer County Surrogate's Office.
In November 1945 and thereafter, all of the now living non-resident beneficiaries and the personal representatives of the non-resident beneficiaries now deceased executed new powers of attorney to the defendants British Consul-General and Canadian Consul-General respectively, each of the City, County, and State of New York. These latter authorizations confer upon the respective Consuls complete right, power, and authority to represent such beneficiaries and the personal representatives of the deceased beneficiaries, in the collection of their respective bequests from the decedent's estate.
In consequence of the conflicting claims of the alleged attorneys-in-fact, each of whom has demanded payment of the balance due to the beneficiaries whom he assumes to represent, the plaintiff, in pursuance of a bill of interpleader filed in the *Page 463 
Court of Chancery, and by virtue of the interlocutory decree made in the cause on March 2, 1948, has paid into this court the sum of $16,749.54, representing the balance of the decedent's estate in his hands for distribution.
The following paragraphs of the supplemental pre-trial order merit serious attention and their significance recommends their quotation:
2 (c) "(x) The defendant, Lhoe O. Thieme, is not an attorney or counselor at law of the State of New Jersey, or of any other state."
3 (a) "The defendant, Lhoe O. Thieme, is engaged in the heirhunting business on a national and international scale and has been so engaged for many years. Originally, he operated out of Chicago, Illinois, but he now has his principal office and place of business at 128 So. 18th Street, Philadelphia, Pennsylvania.
3 (b) "The defendant, Lhoe O. Thieme, acting by and through his agents, solicited and obtained from the non-resident British and Canadian beneficiaries of the testatrix's estate more particularly referred to in subparagraphs (b) to (j), inclusive, and (l) to (o), inclusive, of the pretrial order, dated October 8, 1948, with the exception of James Patrick Coughlin and his three children aforesaid, within about 1 1/2 months from and after the testatrix's death and within about 1 month from and after the probate of her last will and testament, the purported powers of attorney more particularly referred to in subparagraph (q) of said pretrial order, as modified by paragraph 2 (b) hereof.
3 (c) "For many years, the defendant, Lhoe O. Thieme, has made a regular practice of employing lawfully licensed attorneys in New Jersey and elsewhere to represent him under purported powers of attorney solicited and obtained by him from heirs and beneficiaries of decedent's estates residing in foreign countries, and, in so acting in the estate of the testatrix, said defendant has acted, and is acting, as an intermediary and middleman between the aforesaid non-resident British and Canadian beneficiaries thereof and the New Jersey attorney selected and employed by him under his purported powers of attorney.
3 (d) "The defendant, Lhoe O. Thieme, has failed and refused to pay to said beneficiaries and the personal representatives of such of them as are now deceased, or any of them, any part of their respective shares of the moneys received by him as aforesaid, and has always failed and refused to account for the same, although requested repeatedly to do so, other than to make payments on account to certain of said beneficiaries, the amounts of which are in dispute between the respective defendants as follows:
"(1) The defendant, British Consul-General, of the City, County and State of New York, contends that the defendant, Lhoe O. *Page 464 
Thieme, has paid the said Peter McEvoy the sum of 12 pounds sterling, whereas the defendant, Lhoe O. Thieme, contends that he has paid him the sum of $75.19.
"(2) The defendant, British Consul-General, of the City, County and State of New York, contends that the defendant, Lhoe O. Thieme, has paid the said William McCartan the sum of 13 pounds sterling, whereas the defendant, Lhoe O. Thieme, contends that he has paid him the sum of $75.19.
"(3) The defendant, Canadian Consul-General, of the City, County and State of New York, contends that the defendant, Lhoe O. Thieme, has paid the said William Killen the sum of $62.50, whereas the defendant, Lhoe O. Thieme, contends that he has paid him and the said Edward Coughlin the total sum of $125.32."
The defendant Thieme has never personally attended any of the proceedings in this action and has submitted himself to the jurisdiction of this court by virtue of an acknowledgment of service of process by his attorney.
Yes, I have also observed that the Consuls have undertaken to assert in their supplemental statements, counterclaims against the co-defendant Thieme. Without determining the propriety of such procedure under our former practice in interpleader actions, there would appear to be no doubt of its availability at present under the sanction of Rule 3:13-2 and 6. Moreover, no answers or other defensive measures have been employed by the defendant Thieme to resist the counterclaims against him.
Several points have been the subjects of debate in this proceeding, such as the revocability of the powers of attorney acquired by the defendant Thieme, whether the powers are coupled with an interest and whether the revocation of his powers was too tardy to be effectual. It seems to me that a determination of the alleged inherent invalidity of those powers of attorney will be dispositive of all of the points.
In looking upon the vast and expansive field of human activities we are occasionally obliged to contemplate the innumerable avenues of endeavor, ethical and unethical, moral and immoral, lawful and unlawful, pursued in quest of profit. Unfortunately there are among them practices which in America we have colloquially styled "rackets."
Many years ago a type of activity was devised to which the title of "heir-hunting" was commonly ascribed. The enterprise *Page 465 
itself preferred to be described as a "probate research" agency. The business consisted of investigating the records of probate and surrogate courts and notifying particularly non-resident heirs, legatees or next of kin of their beneficial interests in the designated estate. Such beneficiaries were informed of the time, skill and money expended in the investigation and of their good fortune of which they would not have otherwise learned. Appropriate powers of attorney were solicited to enable the kind and gracious agent to collect the respective shares of the estate, from which a stipulated compensation, normally on a percentage basis, would be deducted for the services rendered by the agent.
It soon became evident that in many instances such agencies were not "heir-hunters" but more explicitly "heir-chasers" and in general our courts regarded such enterprises with disfavor. 171A.L.R. "Annotation" p. 351.
In the present case the stipulation embodied in the supplemental pre-trial order definitely reveals that the defendant Thieme, "acting by and through his agents, solicited and obtained from the non-resident British and Canadian beneficiaries * * * about 1 1/2 months from and after the testatrix's death * * * the purported powers of attorney * * *" and that he "has made a regular practice of employing lawfully licensed attorneys in New Jersey and elsewhere to represent him under purported powers of attorney," and in the present case "has acted, and is acting, as an intermediary and middleman between the * * * beneficiaries and the New Jersey attorney selected by him * * * under his purported powers of attorney."
I am unaware of any reported decision in our State relative to the pursuit generally known as "heir-hunting." I desire it to be understood that I am not at present concerned with all patterns of such an enterprise but only with the model of it exhibited by the acknowledged performances and circumstances of the case now before me.
Our statutory enactments (R.S. 2:111-1 to 8, inc.,N.J.S.A.) relative to the unlawful practice of law supply a source from which an indication of our public policy in such cognate *Page 466 
matters can be derived. I am unable to assimilate the conduct of the defendant Thieme in this case with that of a mercantile or collection agency or adjustment bureau. Suffice to notice that no similar exemption has been conferred upon "heir-hunters." In reButler, 29 Cal. (2d) 419, 171 A.L.R. 343,177 P. (2d) 16.
It has been acknowledged by judicial authority that the practice of law does not lend itself to precise and all-inclusive definition. The controlling consideration, it is said, is the character of the service rendered. Auerbacher v. Wood,142 N.J. Eq. 484, 59 Atl. (2d) 863; Tumulty v. Rosenblum,134 N.J. Law 514, 48 Atl. (2d) 850.
Here, it is evident that Thieme, having learned of the names and addresses of the beneficiaries, forthwith solicited and obtained the authority to represent them with powers of broad amplitude applicable to the administration of a decedent's estate. A percentage of the bequests payable to his principals would constitute his compensation from which it was contemplated he would retain the services of an attorney of his own choice. Mindful of all of the characteristics of the activities in which the defendant Thieme indulged; I am of the opinion that collectively they constituted an unlawful practice of law offensive to the laws of this state. In Matter of Lynch,154 N.Y. Misc. 260, 276 N.Y. Supp. 939; In re Wellington'sEstate, 154 N.Y. Misc. 271, 276 N.Y. Supp. 946, Ibid160 N.Y. Misc. 383, 386, 289 N.Y. Supp. 1005; In re Vogelsang'sEstate, 162 N.Y. Misc. 257, 293 N.Y. Supp. 346; In reTuthill, 256 App. Div. 539, 10 N.Y. Supp. (2d) 643; In reButler's Estate, supra; In re Reilly's Estate, 81 Cal.App.(2d) 564, 184 Pac. (2d) 922; cf. Ready v. Nat'l StateBank, 13 N.J. Misc. R. 517, 179 Atl. 636, affirmed117 N.J. Law 554, 190 Atl. 76.
Moreover, practices such as are employed by this defendant seem to me to be inimical to the public policy of protecting beneficiaries of estates from imposition and unnecessary expense. The speedy solicitation of powers of attorney from "knownlegatees" who would receive pursuant to law prompt notice of the probate of the will (R.S. 3:7-3.1, N.J.S.A.) and who ordinarily will receive their bequests in the usual course of *Page 467 
the administration of the estate without any deductions for collection fees, where regularly pursued for profit, is an exploitation unfavorable and adverse to public policy.
I accordingly resolve that the powers of attorney so acquired by the defendant Thieme are invalid and void. He should account for the funds heretofore received by him on behalf of the beneficiaries.
A formal judgment sequential in all respects of my conclusions may be submitted.