IN THE MATTER OF THE REAL AND PERSONAL PROPERTY OF FLORENCE VOLKMAR, NOW DECEASED.

IN THE MATTER OF THE REAL AND PERSONAL PROPERTY OF WILLIAM C. SCHMIDT, NOW DECEASED.

IN THE MATTER OF THE ALLEGED ESCHEAT OF THE PERSONAL PROPERTY OF HILDA P. WILLITS, NOW DECEASED.

Superior Court of New Jersey
Chancery Division Mercer County

Decided March 4, 1982.

*Robert P. Krenkowitz,* Deputy Attorney General, argued the motion for the State of New Jersey, plaintiff (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

DREIER, J. S. C.

The novel issue presented by these three cases is whether the State may be reimbursed for its costs and legal fees incurred in (1) setting up and administering conservatorships [1] of the assets

---

[1] In recent years the Chancery Division has established a procedure by which the court appoints a conservator to marshall and protect the intestate's assets. The authority for this procedure stems from *Attorney-General v. Clavin,* 72 *N.J.Eq.* 642, 645 (Ch.1907). The need for a court-appointed conservator is two-fold: (1) to provide an individual whose primary duty is to protect the assets for the next lawful taker, be it the State should the escheat proceed, or the heirs-at-law if any are located; and (2) to avoid any question of conflict of interest between the Attorney General and future private intestate beneficiaries, should the State's escheat proceeding not succeed. In some cases, where this potential conflict is slight, the Attorney General himself (or his designee) is appointed conservator. This court and its predecessors have approved the allowance of reasonable compensation to the conservator of the estate, paid out of the estate's assets, regardless of the ultimate disposition of the escheat proceeding. This opinion extends such an

of an intestate decedent's estate and (2) conducting inquiries that lead to the discovery and location of next-of-kin in preliminary escheat proceedings.

█ The real and personal property of a person who dies intestate and without any next-of-kin escheats to the State. *N.J.S.A.* 2A:37–1 *et seq.; Kugler v. Schaedel*, 120 *N.J.Super.* 21, 24 (App.Div.1972). Concurrent with the Attorney General's initiation of escheat proceedings, extensive kinship inquiries are usually undertaken. In each of these three cases the State not only conducted document searches but also pursued through correspondence and personal contacts all sources of potential information about the existence and whereabouts of the intestates' presumptive heirs throughout the United States and, in one case, in Germany. In each of the cases at bar the intestate beneficiaries were located through these exhaustive efforts of the State's investigators.

The net assets of the three estates, after creditors' claims were satisfied (but prior to the payment of conservators' fees and expenses) were approximately $25,000, $82,000 and $148,000. Simultaneously with the applications for declaration of the next-of-kin as heirs-at-law and distributees of the conserved estates, the Attorney General moved for an allowance for costs and fees in the amounts of $1,000, $2,500 and $6,500, respectively.

█ Although no member of the Department of Law, including the Attorney General, may receive *personal* compensation for legal services rendered, *N.J.S.A.* 52:17A–10, the State itself, through the State Treasurer, is permitted to accept reimbursement for costs and fees, provided such an allowance is not otherwise prohibited. *N.J.S.A.* 2A:37–21 (formerly *R.S.* 2:53–23) has the "effect of lifting the statutory restrictions on the Attorney General or his representatives receiving an allowance

---

allowance of compensation to the State when the State itself, through its designated agent, acts as conservator.

when otherwise permitted." *State v. Otis Elevator Co.*, 12 *N.J.* 1, 19 (1953).

One instance, relevant to the present cases, in which costs and fees may be awarded, is found in *R.* 4:42–9(a)(2) which permits payment of fees out of a "fund in court." *See Sunset Beach Amusement Corp. v. Belk*, 33 *N.J.* 162 (1960); *Sarner v. Sarner*, 38 *N.J.* 463, 468 (1962); *Tabaac v. Atlantic City*, 174 *N.J.Super.* 519 (Law Div.1980). As stated by the court in *Cintas v. American Car & Foundry Co.*, 133 *N.J.Eq.* 301 (Ch.1943), mod. and aff'd 135 *N.J.Eq.* 305 (E. & A.1944):

> The rule which applies in the matter before me is that a court of equity will, in the exercise of sound discretion, order an allowance of counsel fees, payable out of a fund, to a complainant or directly to his counsel where he has, at his own expense, either maintained a successful suit for the preservation, protection or increase of a common fund, or brought into court a fund in which others, similarly situated, may share. [133 *N.J.Eq.* at 303]

Actions in escheat, by their very nature, create such a fund in court. The unclaimed estate of the intestate decedent forms the corpus of this fund when escheat proceedings are initiated. Under *State v. Otis Elevator Co., supra*, when escheat actions are successfully prosecuted by the State, the legal fees and expenses of a specially appointed prosecutor "may be deducted from the monies received by the State Treasurer." *N.J.S.A.* 2A:37–21.[2] In the cases at bar, the escheat proceedings were aborted by the discovery of heirs. Nonetheless, for the reasons set out below, this court finds an award to the State from the fund in court, in partial compensation of legal expenses and fees incurred, to be appropriate.

---

[2]Such a payment must be distinguished from an application for fees on the part of a stakeholder who claims no interest in the fund but withholds payment until the State or some other claimant can show legal entitlement to the monies. In that situation the court may in its discretion award to counsel payment for pursuing the action, "insofar as the services involved represent the efforts of a stakeholder to protect or relieve itself of the fund rather than as an adversary seeking to establish that the fund is its own." *Sunset Beach Amusement Corp. v. Belk*, 33 *N.J.* 162, 169 (1960).

■ Prior to the inauguration of formal escheat proceedings pursuant to *N.J.S.A.* 2A:37–1 *et seq.*, the State, as initial presumptive taker, marshalls, controls and preserves the unclaimed intestate estate. In addition, the responsibility for making funeral arrangements for the intestate decedent often falls upon the State.

The State's involvement with the intestate's affairs does not end when the court appoints a conservator. If a private party is designated conservator, the State must effect an orderly transfer of the assets and transition of the authority to deal with the decedent's estate. Further, the State continues to superintend the conservatorship and may be called upon to conduct the defense in a will contest or in litigation concerning an objectionable claim by a would-be creditor, both on behalf of the State itself and as virtual representative of any potential individual beneficiaries.

Should the State itself be appointed conservator, the unclaimed assets which remain in the State's possession are impressed with a

... *quasi* trust for the eventual surrender and delivery of the abandoned and unclaimed property to the public if and when proceedings to that end are authoritatively inaugerated by the State. [*State v. Standard Oil Co.*, 5 *N.J.Super.* 460, 472 (Ch.Div.1949)]

Even when escheat is not effected and the next-of-kin succeed to the estate, the State can likewise be said to have acted as "trustee" of the assets for the benefit of the intestate takers. Surely the State should be reimbursed for its efforts in preserving the estate's assets when the fruits of such efforts come as a windfall to private beneficiaries, who are thereby spared costly administration expenses to the extent of the State's and/or the conservator's handling of the matter.

Thus, just as the conservator's critical role in preserving and protecting a fund in which others may share commands an allowance for fees and expenses whether the conservator is the State or a private party, so do the State's preliminary activities

prior to the appointment of a conservator, as well as its ongoing oversight duties, warrant a similar allowance.

The application of the State for compensation for expenses incurred in locating the heirs stands on a similar footing. The conduct of a comprehensive kinship inquiry, like the conservatorship procedure, has never been one of the statutory or common-law duties of the Attorney General.[3] There is, however, some legislative and public policy support for such investigative activities. According to *N.J.S.A.* 2A:37–18, the State must provide public notice of escheat proceedings for the purpose of locating unknown next-of-kin. "The notice may contain such ... information as the court may deem proper and which, as a practical matter under the circumstances, might result in notice to the owner." *N.J.S.A.* 2A:37–19. In addition, although not based squarely on statutory mandate, the State's search for next-of-kin is an established practice of many years' standing, which serves to further the express public policy condemning "heir hunting." *Carey v. Thieme*, 2 *N.J.Super.* 458, 466 (Ch.Div. 1949); *Bron v. Weintraub*, 42 *N.J.* 87 (1964); *International Tracers v. Rineer*, 139 *N.J.Super.* 573 (App.Div.1976).

Relying on the above as authority for its activities, the State, through the Attorney General, has taken upon itself the duty of conducting exhaustive kinship inquiries which may range over several continents and consume well over a year of an investigator's time. Such comprehensive kinship investigation is the best

---

[3]The State's role in conducting kinship investigations is distinguishable from its role in defending charitable trusts where such fees are disallowed. *In re Katz' Estate*, 40 *N.J.Super.* 103, 108 (1956). In such cases the State is preserving a fund for the public benefit, whereas in escheat matters the beneficiaries of the preserved fund are private individuals.

In addition, the State's role in escheat actions can be distinguished from the role of the police or of a social service agency, whose activities also benefit private individuals. In the former situation the State is *not* discharging a statutory duty, and when its inquiry bears fruit, private parties are the sole beneficiaries. The police and social service agencies, however, are acting pursuant to a legislative mandate, and although individuals are indeed benefited, the larger benefit accrues to society as a whole.

mechanism for assuring the State that no heirs-at-law exist who might subsequently come forward and claim assets that have already escheated to the State. It is as a result of this procedure that the State can confidently pursue its escheat activities.

The State engages in such kinship inquiries even where the estate is sizable and thus there exists a greater likelihood that heirs-at-law will come forward to challenge the escheat. Its investigative services are not in discharge of a duty owed to the general public, but rather afford a direct pecuniary benefit to one or more private individuals, if heirs are located. Although the fund in court is not enhanced through the State's investigative efforts, the special nature of the services and the direct benefit conferred upon the next-of-kin provide a sufficient basis for an award of fees to the State for this kinship inquiry, on a *quantum meruit* basis. The State may also seek reimbursement for out-of-pocket expenses incurred in performing these investigatory activities. *Oughton v. Bd. of Fire Comm'rs*, 178 *N.J.Super.* 633, 657 (Law Div.1980).

In conclusion, to permit intestate takers, located through the State's investigative efforts, to succeed to assets of an estate marshalled and maintained also through the State's efforts, without bearing the expenses thereof out of the estate's corpus, would constitute unjust enrichment of private parties at the expense of this State's taxpayers. Thus, as there are no statutory prohibitions against compensating the State for costs incurred in conserving the intestates' assets or for locating the next-of-kin in escheat proceedings initiated under *N.J.S.A.* 2A:37-1 *et seq.*, this court will award the full amount of fees and expenses claimed by the State.[4]

---

[4]The equities of awarding to the State fees and costs in preliminary escheat proceedings where next-of-kin are located dictate that such an award be limited to those cases where the net assets of the intestate's estate are not so meager that an award of fees would effectively deplete the available fund. Such a determination must be made on a case-by-case basis.