191 N.J. Super. 362 (1983)
466 A.2d 986
JOSEPH WALTER, PLAINTIFF-RESPONDENT,
v.
SEVERINA SANDS AND OTHERS, DEFENDANTS, AND BETTY SIMON, INTERVENOR-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 1, 1983.
Decided September 8, 1983.
*364 Before Judges BOTTER, POLOW and BRODY.
Horn, Kaplan, Goldberg & Gorny, attorneys for appellant (Jack Plackter, of counsel and on the brief).
Stanford & Bruce, attorneys for respondent (Leland A. Stanford, on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
The issue in this suit to foreclose a tax sale certificate is whether in the circumstances of this case a chancery court can *365 bar the right of redemption asserted by the purchaser of an heir's interest in the property. The purchaser held a tax sale certificate on adjoining property when, shortly before the foreclosure suit was commenced, she purchased the heir's minimal interest for a small sum. Relying on Bron v. Weintraub, 42 N.J. 87 (1964), and his view of the policy to be served by the 1967 amendment to N.J.S.A. 54:5-89.1, the trial judge held that the purchaser cannot defeat plaintiff's foreclosure suit. We disagree and reverse.
Plaintiff brought the underlying suit to foreclose a tax sale certificate he holds on a five-acre vacant lot in Egg Harbor, known as Block 97-A, Lot 21 (Lot 21) on the tax map. He purchased the certificate in 1975 for $100.48, representing $35.96 in delinquent taxes, $4.52 costs and a $60 premium. The assessed value at the time of trial was $8,800. The trial judge noted in his letter opinion that, "[t]he appraisal that was submitted [following trial] in response to the court's request indicates a value of $30,000.00."
Plaintiff's dispute in this appeal is with Betty Simon, who was permitted to intervene to litigate her asserted right to redeem. Simon is the assignee of a tax sale certificate on an adjoining vacant five-acre lot known as Lot 22 in the same block. Her husband acquired the Lot 22 certificate by outbidding plaintiff at a tax sale conducted in early 1979. Soon thereafter, the Simons tried to purchase plaintiff's certificate. When it became clear by the end of May that plaintiff would not sell, Simon or her representative located in Switzerland an heir of the record owner of Lots 21 and 22. She paid him $100 for a deed of his interest in both lots. In finding that consideration to be "nominal," the trial judge also accepted Simon's representation that the heir's interest was only 1.25%. The deed was executed in Switzerland on July 26, 1979, but it was not recorded until September 7, 1979 because the register of deeds insisted on an acknowledgment taken before an American Consul in Switzerland. In the interim, plaintiff commenced this foreclosure suit on August 16, 1979.
*366 The judge held that public policy reflected in N.J.S.A. 54:5-89.1 (the 1967 amendment) bars redemption because Simon paid a nominal consideration for the deed at a time when she knew plaintiff was about to commence foreclosure. The amendment provides in relevant part:
No person ... shall ... have the right to redeem the lands from the tax sale whenever it shall appear that he has acquired such interest in the lands for a nominal consideration after the filing of the complaint, except where such transferee is related by blood or marriage to, or who, because of other close or personal relationship with the transferor, would in normal course be a party to an instrument for little or no consideration, or where such party acquired his interest at a judicial sale. [emphasis added]
This provision creates an exception to the general rule that a purchaser may redeem "until barred by the judgment of the Superior Court." N.J.S.A. 54:5-86. The judge concluded that although Simon purchased the heir's interest before the complaint was filed, she nevertheless violated the spirit of the 1967 amendment because she probably knew that the filing was imminent.
The 1967 amendment was adopted to prevent intruders from tracking down heirs with the aid of information obtained from a foreclosing plaintiff's notice of lis pendens filed when the suit is commenced. Such heir-hunters, trading on the efforts of the foreclosing certificate-holder, were sometimes able to purchase the fee and redeem the property. In order to redeem, the heir-hunter would have to reimburse the certificate-holder for taxes, interest and costs he had paid the municipality, N.J.S.A. 54:5-60, but not for attorney's fees and some other expenses of the foreclosure proceeding. N.J.S.A. 54:5-61. As a result, investors were reluctant to bid at tax sales, thereby depriving municipalities of a means of collecting taxes.
The legislative purpose to eliminate the foregoing practice is spelled out in an unusually detailed statement that accompanied the bill. It reads in part:
The purpose of the above supplement to the Tax Sale Revision is to curb a very questionable scheme that has recently been carried on in a wholesale fashion in the northern counties of the State to the disadvantage of plaintiffs (municipalities and individuals, alike) in tax foreclosure actions.

*367 Although our present statute (N.J.S.A. 54:5-89.1) permits bona fide purchasers and mortgagees who have acquired their interests in lands while a tax foreclosure action is pending, to be admitted as parties to the action and make redemption, unauthorized persons, having no existing interests in the proceedings or the title to the lands, have made a practice of checking the notices of lis pendens that are filed in such suits in the county recording offices, to ascertain the nature of the action and the property affected. Armed with that information, they examine the dockets and files relating to the actions in the office of the Clerk of the Superior Court (or the copies in the office of the county clerk) to ascertain the names and addresses of the defendants in the cause from whom they then indiscriminately solicit conveyances of title, or other interests in the lands under foreclosure, always for a nominal consideration, usually $25.00 or $50.00, which they characterize as a "courtesy consideration" in dealing with those they solicit. They thereupon force themselves, without leave or welcome, either directly into the pending proceedings, or indirectly, by paying to the tax collectors the redemption sums fixed by the court on the basis of an ostensible interest, thereby eliminating the tax lien holder.
In short, their interest is not inspired by their desire to purchase the lands, but solely because of the pendancy of the foreclosure action. They are not bona fide purchasers or grantees.
....
This iniquitous practice constitutes a burden on the purpose of the Tax Sale Revision, namely, the collection of revenue. No one will purchase at tax sales under these conditions.
....
[Statement accompanying Sen. No. 291, L. 1967, c. 149]
Simon had a bona fide interest in becoming owner of Lot 21. Her offer to redeem is not barred by either the letter or the spirit of the statute. Regardless of whether she knew that plaintiff was about to file the complaint, she was not an intruder looking for a way to exploit the work of others' by perusing the daily lis pendens filings. She tried to buy plaintiff's interest in Lot 21 from him in order to own both adjoining lots. When that effort failed, she legitimately sought to redeem by locating an owner and, before foreclosure was commenced, paying him for his very small interest about what plaintiff paid for the certificate. No one suggests that Simon deceived the heir. There is no reason why we should deprive him of his right to sell his interest.
It should be noted that after reimbursing plaintiff, Simon is not entitled to an assignment of the certificate. McGuinness v. *368 Taylor, 138 N.J. Eq. 548, 551 (Ch. 1946); Taylor v. Borgfeld, 139 N.J. Eq. 177, 180 (Ch. 1947). If plaintiff and Simon are unable to settle their differences and Simon redeems, the certificate will be cancelled and the foreclosure suit dismissed. Simon will continue to own only a partial interest in Lot 21 and will have to look to her co-tenants for reimbursement of what she paid plaintiff. See Lonsk v. Pennefather, 168 N.J. Super. 178, 183 (App.Div. 1979), certif. den. 82 N.J. 285 (1980).
Bron's pejorative references to "heir-hunting" and its potential for exploitation serve to alert a chancery judge to consider exploitation, if it exists, as an overriding factor that would bar redemption in this type of foreclosure suit. However, unlike the conduct of the heir-hunter in Bron, Simon's conduct cannot be characterized as exploitive. In Bron, each of 10 families bought and lived in a different house on land that had once been subject to a tax certificate. When it was later discovered that the tax foreclosure complaint had omitted naming the record owners, the municipality agreed to reforeclose. In doing so it advertised notice of the suit for the benefit of the omitted owners. An heir-hunter seeing the ad tracked down the owners and purchased their interest for a small sum. Strong equitable considerations prompted the court to protect the homeowners by compelling the intruder to give up his interest in the property upon being reimbursed.
Although looking askance at the practice of heir-hunting, the court went no further than to deny an heir-hunter the right to redeem only when he intrudes himself into the proceedings by exploiting a foreclosure notice that was not meant for him. The intrusion was seen as exploitive in that case because of its effect on the 10 families whose homes occupied the property. Bron, supra, 42 N.J. at 95. Limiting Bron to its facts, this court, in an unreported opinion, held that N.J.S.A. 54:5-86 permitted an owner to redeem "until barred by the judgment of the Superior Court" even if the owner acquired his interest after the foreclosure suit was filed and regardless of the manner in which he acquired his interest. Government Security Co. v. Behnke (Dkt. *369 No. A-72-64), certif. den. 46 N.J. 313 (1966). See also to the same effect Government Security Co. v. Waire, 94 N.J. Super. 586, 589 (App.Div. 1967), certif. den. 50 N.J. 84 (1967).
The last paragraph of the legislative statement accompanying the 1967 amendment makes it clear that the amendment was only intended to overcome the effect of the unreported case:
[R]ecently an effort was made in the courts to stop the practice on equitable grounds, but this was not successful. Government Security Co. v. Behnke, Docket No. A-72-64 (App.Div. Nov. 18, 1965), certification denied by the Supreme Court, Docket No. 4951, February 1, 1966. Only a legislative enactment will eliminate this "racket."
The 1967 amendment does no more than deny the right of redemption to an heir-hunter who purchased his interest "for a nominal consideration after the filing of the complaint." N.J.S.A. 54:5-89.1. An owner, such as Simon, who purchased her interest before filing of the complaint may redeem "until barred by the judgment of the Superior Court." N.J.S.A. 54:5-86.
An investor holding a tax sale certificate on property of value is surely aware of the high likelihood of redemption during the two-year statutory waiting period before a foreclosure suit may be commenced. N.J.S.A. 54:5-77. The taxpayer-owner may acquire the funds to redeem; he may sell to a competing investor or developer who redeems; or he may simply be postponing redemption to avoid higher interest rates on borrowed money. Offsetting the risk of redemption is the unlikelihood that the certificate-holder will suffer a serious loss if redemption occurs, unless he has incurred expenses in commencing foreclosure for which he is not reimbursed. The Legislature has struck a balance among these competing interests. There is no reason for the judiciary to intervene in the absence of compelling equities such as those present in Bron.
We recognize that the statutes governing tax foreclosure suits "shall be liberally construed as remedial legislation to encourage the barring of the right of redemption by actions in the Superior Court to the end that marketable titles may thereby be secured." N.J.S.A. 54:5-85. However, as we *370 said in Landa v. Adams, 162 N.J. Super. 318, 323 (App.Div. 1978), "this policy in favor of settled tax titles attaches once the tax sale certificate owner has a perfected title," or, as in Bron, supra, 42 N.J. at 91-92, where there has been reliance on the honest but mistaken belief that the certificate owner had perfected title.
The order appealed from would appear to be interlocutory. Nevertheless, because resolution of the issues raised is necessary to bring this entire litigation to a close, we sua sponte grant leave to appeal nunc pro tunc. R. 2:4-4(b)(2). Medcor, Inc. v. Finley, 179 N.J. Super. 142, 144-145 (App.Div. 1981).
Reversed and remanded for further proceedings consistent with this opinion.