230 N.J. Super. 254 (1989)
553 A.2d 365
GURDON B. WATTLES, SUBSTITUTED PLAINTIFF FOR ELIZABETH B. SHIELDS, PLAINTIFF-APPELLANT, CROSS-RESPONDENT,
v.
EDWARD PLOTTS, HIS HEIRS, DEVISEES AND PERSONAL REPRESENTATIVES, AND HIS, THEIR OR ANY OF THEIR SUCCESSORS IN RIGHT, TITLE, AND INTEREST, ETC., ET AL., DEFENDANTS-RESPONDENTS, CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1988.
Decided February 9, 1989.
*255 Before Judges O'BRIEN, SCALERA and STERN.
Francis P. Sutton argued the cause for appellant-cross-respondent.
Michael V. Kerwin argued the cause for respondents-cross-appellants (Kerwin & Kerwin, attorneys; Michael V. Kerwin on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Plaintiff Gurdon B. Wattles, substituted plaintiff[1] for his mother Elizabeth B. Shields who was the purchaser of a tax sale certificate and who filed an action to foreclose the right of redemption, appeals from a judgment authorizing defendants to redeem the tax sale certificate held by plaintiff. Defendants cross-appeal from that portion of the judgment setting forth the amount necessary to redeem which includes expenses and attorneys' fees. We affirm.
On December 13, 1969, Elizabeth B. Shields and her late husband Richard T. Shields purchased a tax sale certificate covering Lot 10 in Block 57 on the Tax Assessment Map of the Township of Lebanon, consisting of 6.21 acres, for the total sum of $1,131.59 made up of taxes of $70.50 plus interest and costs, together with a premium of $1,050. Upon the death of Richard T. Shields, his interest was conveyed by executor's deed to Elizabeth B. Shields.
A 60-year title search of the premises revealed the last record owner to be Edward Plotts. A search of the records of the Surrogates of Hunterdon and Warren Counties did not reveal any estate for Edward Plotts or his wife Catharine Plotts. Inquiries by plaintiff's attorney of old-time residents of the area did not disclose any knowledge of Edward Plotts nor his heirs. Although the telephone book in Hunterdon County *256 did not reveal anyone with the surname Plotts, the telephone directory for the Borough of Washington in Warren County listed a J.L. Plotts. That person indicated his belief that he was an heir of Edward Plotts and perhaps the sole heir, but concluded that "[W]ithout further proof of my eligibility as an heir to Edward Plotts it would be pointless to pursue the case." He has since moved to Michigan.
On November 21, 1985, a notice of the intention of Elizabeth B. Shields to institute a tax title foreclosure suit was published in the Hunterdon County Democrat which solicited information as to any person who might have an interest in the property. There was no response to this notice. On March 24, 1986, Elizabeth B. Shields filed a complaint to foreclose the right of redemption, naming as defendants Edward Plotts, his heirs, etc., "unknown owners" and their heirs, etc., and James L. Plotts and the State of New Jersey. A request to enter the default of defendants was filed on July 9, 1986. On October 24, 1986, Irma Horrocks and Harry B. Shurts obtained an order permitting them to file an answer out of time. On March 24, 1987, five additional defendants entered the action, Luthor Guise, Jacob Castner, Janet Currine, Gregory Younkin and Clarence Chevren.
These persons, ultimately ruled to be the heirs of Edward Plotts with a right to redeem, were disclosed through the efforts of National Asset Recovery, Inc. (National), described by plaintiff as an "heir hunter." National started its investigation with James L. Plotts who had been found by plaintiff and named as a defendant in the foreclosure action. In New Jersey census records National discovered that Edward Plotts resided in the Borough of Washington with his wife Catherine Plotts and had two daughters, Elizabeth and Annie. Mr. Plotts died intestate, and National pursued the heirs and devisees of his daughters, ultimately revealing the persons named as defendants in the action. National entered into an agreement with the heirs and devisees under the terms of which, at no expense to them, National would advance the money necessary to redeem *257 the premises from the tax sale and "to turn it to a profit." After reimbursement for National's out-of-pocket expenses out of the proceeds of the sale of the property, the balance would be split between National and the heir. National was given full authority to sell the asset at public or private sale.
The issue contained in the pretrial order entered on December 11, 1987 was, "Are the individual defendants heirs of Edward Plotts?" On that day, December 11, 1987, the trial judge denied plaintiff's application based upon N.J.S.A. 54:5-89.1 to bar defendant Harry B. Shurts[2] from a right of redemption based upon the involvement of National in disclosing his identity as an heir. On this appeal, plaintiff seeks a review of that decision.
Thereafter the matter was tried in the Chancery Division and the trial judge concluded on February 1, 1988 that the named defendants are the heirs of Edward Plotts.[3] In the final judgment, the judge included in the amount to redeem, in addition to the taxes and interest, expenses in the amount of $58.73 and an attorney fee of $1,350, for reasons explained in the judge's letter decision of February 10, 1988. Defendants cross-appeal from that determination.
Plaintiffs contend that the agreement between National and Shurts concerning redemption of the property triggered N.J.S.A. 54:5-89.1, the pertinent portion of which reads:
No person, however, shall be admitted as a party to such action, nor shall he have the right to redeem the lands from the tax sale whenever it shall appear that he has acquired such interest in the lands for a nominal consideration after the filing of the complaint, except where such transferee is related by blood or marriage to, or who, because of other close or personal relationship with the transferor, would in normal course be a party to an instrument for little or no consideration, or where such party acquired his interest at a judicial sale.
*258 The practice of "heir hunting" was addressed by our Supreme Court in Bron v. Weintraub, 42 N.J. 87 (1964), where the Court noted the established hostility toward it. In that case, a township foreclosed tax sale certificates in 1940, and in 1952 conveyed the lands to a developer who erected homes which were sold to other parties. The foreclosure by the municipality failed to join the heirs of one Harry Weintraub, who had acquired title to the premises in 1931 through another corporation which, in turn, had acquired title in 1929 from the corporation named as owner in the foreclosure action. When one of the homes erected on the property was sold in 1959, a search revealed the failure to bar the Weintraub interests. A new foreclosure suit to bar those interests was instituted, fixing a date for the unknown heirs of Weintraub to redeem or be barred. At the eleventh hour the premises were redeemed by Hudson Trading Corp. on the basis of deeds obtained from the Weintraub heirs. Under the terms of the trial court's judgment, the householders would have had to pay the sum of $19,555.11 plus mesne profits of $2,856.91 to buy the land unaffected by the improvements. Hudson Trading Corp. had paid the Weintraub heirs $400. We affirmed the trial court but the Supreme Court reversed, concluding that the householders were equitably entitled to the property upon the payment of the sum of $400 plus simple interest from the date of the payment to the Weintraub heirs. The decision was based upon concepts of public policy and was the forerunner to the language incorporated in N.J.S.A. 54:5-89.1 by amendment adopted in 1967 by L. 1967, c. 149.
We construed that statute in Walter v. Sands, 191 N.J. Super. 362 (App.Div. 1983), finding it inapplicable to the facts in that case. In our opinion we quoted extensively from the detailed statement that accompanied the bill which adopted this provision.
In his opinion, the trial judge in this case noted our decision in Walter v. Sands and the Supreme Court's decision in Bron v. *259 Weintraub and concluded the statute was inapplicable to this case, noting:
National Asset has not purchased the subject property for a nominal consideration after the filing of the complaint. Indeed, National has not purchased the property for any consideration. There is simply no deed out to National. National has not redeemed the property.
The limited exception contained in 54:5-89.1, concerning heir hunters who purchased the property or obtained an interest for a nominal consideration, does not appear applicable in this case.
Additionally, since this case does not involve the evil sought to be prevented by the Statute, the fact that Mr. Shurts, an alleged heir, with bona fide interest, entered the case after the complaint was filed, is irrelevant. As noted by the Court in Sands [sic], although the Statutes governing the tax foreclosure shall be liberally construed as remedial legislation to encourage the barring of the right of redemption, by action of the Superior Court to the end that marketable titles may thereby be served.
`It is well settled that this policy, in favor of settled tax titles attaches ... only when the tax sale certificate owner has a perfected title.'
In general we agree with that determination and affirm substantially for the reasons given by Judge Wilfred P. Diana. While, by virtue of its agreement with the heirs, National may have "acquired an interest" in the land, it is neither a party to the action nor is it seeking to redeem for itself. However, we observe that the role of National in this case does not differ greatly from that of Hudson Trading Corporation in the Bron case, although in this case there were no intervening equities. The representatives of National concede they became aware of the potential of unknown heirs through the suit instituted by Mrs. Shields. They acknowledge contacting James L. Plotts who was named as a defendant initially in the suit and whose identity was learned through the efforts of the plaintiff. There can be no doubt of the profitability of this heir-hunting enterprise since we observe that the assessed valuation of the lot in question has gone from $34,000 in 1987/88 to $162,100 in 1988/89. Redemption of this property by the heir upon the payment of $12,376.42, with National retaining the sole discretion to sell the property, subject only to the right of the heir to purchase the property "on the same terms and conditions as may be contained in any bona fide offer to purchase the *260 property" which may have been received by National, reflects the magnitude of the value of National's one-half interest in the proceeds after it receives full reimbursement of its expenses. On the other hand, National did a far more thorough search to ascertain heirs than did plaintiff, although admittedly she complied with the minimum requirements of the statute, and defendants understandably do not complain because they benefit by the efforts of National.
The trial judge has made a determination that defendants in this case are in fact heirs who are entitled to redeem. We recognize that the appreciation in the value of this land constitutes a windfall both to the heirs as well as to National, to the detriment of the purchaser of the tax sale certificate. Nonetheless, our tax sale structure contemplates a right of redemption in the owner, and we see no reason why the heir of such an owner should be barred from his or her right of redemption simply because their right to redeem was brought to their attention by an heir hunter and they entered into a generous agreement with the heir hunter to give it half of their profit in exchange for having been located in order to exercise their right of redemption. The purchaser of the tax sale certificate got what she bargained for.
In light of the continued intrusion of heir hunters into the process of tax sales which may have some effect, as suggested by plaintiff, on the purchase of tax sale certificates to the detriment of municipalities suggests that the Legislature perhaps should address this entire question and set some ground rules and perhaps afford some type of premium to the disappointed purchaser of the tax sale certificate beyond repayment of the taxes and interest which it has paid.
The decision to award costs and fees to plaintiff is affirmed substantially for the reasons given by Judge Diana in his written opinion of February 10, 1988.
AFFIRMED.
NOTES
[1] By order of January 22, 1988.
[2] The motion was apparently limited to Harry B. Shurts since William Smith, president of National, had attempted to redeem the property on behalf of Shurts.
[3] The trial judge also concluded that there may possibly be more heirs.