742 A.2d 639 (1999)
327 N.J. Super. 96
In the Matter of the ESTATE OF Catherine CAMPBELL, Decedent.
Superior Court of New Jersey, Chancery Division, Probate Part, Monmouth County.
Decided July 27, 1999.
*640 Thomas C. Kelly, West Caldwell, for plaintiff Loretta C. Hanley, Administratrix of the Estate of Catherine Campbell.
Arthur Stein & Associates, Forked River, (Ellen M. Hale, appearing), for Various Heirs of the Estate of Catherine Campbell.
FISHER, P.J.Ch.
Catherine Campbell died intestate. The administratrix of her estate seeks an order which would limit the amount of compensation due a genealogical firm which located 35 previously unknown heirs in Great Britain and Ireland. While the parties dispute whether the agreement between the genealogical firm and the heirs is unconscionable or void against public policy, clearly the issue is not properly before the court.
Catherine Campbell died on March 31, 1997. Her friend, Loretta C. Hanley, applied for and was granted letters of administration on April 28, 1997. At that time there were only four known heirs: Mary Flannery, Ann Flannery, Margaret Costigan and Maryann Kraut. Not long thereafter, Arthur Stein & Associates filed appearances for 35 heirs residing in Great Britain and Ireland ("the heirs"). Arthur Stein & Associates ("defense counsel") appears to have been retained by Blake and Blake Genealogical, Inc. ("the genealogical firm") to represent the heirs in this matter. The heirs agreed to compensate the genealogical firm in the amount of 35% of the net proceeds each heir receives. The administratrix contends those agreements are void against public policy or that the rate of compensation is unconscionable.
In support of her view, the administratrix refers to various inapposite decisions of the courts of this State expressing disfavor with heir hunters. Those decisions[1] suggest such agreements may be contrary to public policy, although none of the New Jersey cases, as the administratrix recognizes, precisely dealt with the present issue. There are also decisions from other jurisdictions which are not so hostile to this practice.[2] For a comprehensive history of such agreements, see, Nelson v. McGoldrick, supra; Note, "Heir-Hunting Agreements: Recommendations for the Extension of Probate Court Jurisdiction," 6 Conn.Prob.L.J. 87 (1991). Whether heir hunters should be viewed as "self-serving intermeddlers" or the providers of "useful and necessary services" remains a matter of much dispute in the absence of legislative direction. See, Note, supra, 6 Conn. Prob.L.J. 87.
While it has been noted that Bron v. Weintraub should alert "a chancery judge to consider exploitation" in similar circumstances, see, Walter v. Sands, 191 N.J.Super. 362, 368, 466 A.2d 986 (App.Div.1983), our Legislature has not dealt with the agreements of genealogical firms and unknown heirs in the present setting. Indeed, the only proof of the Legislature's view of heir hunters can be found in a slightly different context. That is, the Legislature has declared unenforceable, in some respects, and restricted, in other respects, agreements "to pay compensation to locate, deliver, recover, or assist in the recovery of property reported under " the Uniform Unclaimed Property Act. N.J.S.A. 46:30B-106 (emphasis added). Here, however, the provisions of N.J.S.A. *641 46:30B-106 do not apply because no property was abandoned and paid into that fund.
But close examination of N.J.S.A. 46:30B-106 suggests no particular hostility toward the agreements in question. The statute indicates that "[a]greements entered into before the property was presumed abandoned are valid only if the fee or compensation agreed upon is not more than 35% of the value, the agreement is in writing, signed by the apparent owner, and clearly sets forth the nature and value of the property and the value of the apparent owner's share after the fee or compensation has been deducted." The genealogical firm's agreement calls for the payment of 35% of the net proceeds received by the heir.[3] It is difficult to conclude that the agreements in question are void as against public policy, or the amount of compensation is unconscionable in the face of N.J.S.A. 46:30B-106, when the compensation agreed to by the genealogical firm and the heirs falls within the ceiling referred to in N.J.S.A. 46:30B-106. However, this statute, while suggesting a limit on such agreements[4] also states that "nothing in this section shall be construed to prevent an owner from asserting at any time that an agreement to locate property is based upon an excessive or unjust consideration." This last provision foreshadows this court's view of the present dispute.
Unlike the various cases cited or located, the question of the fairness or propriety of the amount charged by the genealogical firm to the heirs arises in a context that does not properly frame the issue. Here, it is the administratrix which complains of these agreements. The administratrix is not a party to those agreements, stands to lose nothing from the consummation of those agreements and, thus, does not have standing to complain. Rather, to the degree there is any dispute about the enforceability of those agreements, it should arise in an action between the heirs and the genealogical firm. So far, no heir has come forward in this or any other court and complained of the rates charged by the genealogical firm. While, again, it may be that New Jersey law is not hostile to such agreements, as evidenced by N.J.S.A. 46:30B-106, this court has no roving jurisdiction to ferret out disputes where none may exist. The heirs may be *642 perfectly satisfied with their contractual arrangements with the genealogical firm. Until they complain, and commence action in that regard, the court finds no reason to examine the matter further. This court should not attempt to resolve disputes which do not presently exist.[5]
Accordingly, the administratrix's claim regarding the enforceability of the agreements between the 35 heirs located in Great Britain and Ireland, and the genealogical firm, is dismissed due to the administratrix's lack of standing to complain. Counsel for the administratrix is directed to submit, pursuant to the five day rule, a form of judgment in conformity with this Opinion.
NOTES
[1] Bron v. Weintraub, 42 N.J. 87, 199 A.2d 625 (1964); Wattles v. Plotts, 120 N.J. 444, 577 A.2d 131 (1990); Carey v. Thieme, 2 N.J.Super. 458, 64 A.2d 394 (Ch.Div.1949). See also the following decisions of other jurisdictions: In re Taylor, 216 B.R. 515 (Bankr.E.D.Pa.1998); In re Butler's Estate, 29 Cal.2d 644, 177 P.2d 16 (1947); Estate of Kraus, 144 Misc.2d 34, 543 N.Y.S.2d 620 (Surr.Ct.1989).
[2] Nelson v. McGoldrick, 127 Wash.2d 124, 896 P.2d 1258 (1995), reversing 73 Wash.App. 763, 871 P.2d 177 (1994); Pelton v. Witcher, 319 S.W.2d 400 (Tex.Civ.App.1958); In re Estate of Katze-Miller, 158 Wis.2d 559, 463 N.W.2d 853 (1990); In re Croake's Estate, 218 Ill. App.3d 124, 161 Ill.Dec. 209, 578 N.E.2d 567 (1991), cert. denied 142 Ill.2d 654, 164 Ill.Dec. 916, 584 N.E.2d 128 (1991).
[3] A copy of the agreement between one of the heirs and the genealogical firm (which is represented to be identical to the others) states: In consideration of your having brought to the attention of the undersigned certain assets to which I may have a vested interest, the nature of which is to be disclosed to me by Blake and Blake Genealogists Inc.,; And in consideration of the work to date and of your further investigations to gather all available genealogical information regarding my said claim, I do hereby assign to Blake and Blake Genealogists, Inc. an amount equal to thirty five percent (35%) of whatever net proceeds I receive as a result of your efforts subject to the following conditions:

1. Blake and Blake Genealogists, Inc. is obligated to pay all expenses to prove my claim and I will not have to advance any monies toward their efforts.
2. Blake and Blake Genealogists, Inc. is authorized to retain an attorney at no cost to me to represent my interest and to collect all assets due.
3. If I receive no assets, Blake and Blake Genealogists, Inc. will likewise receive nothing and this assignment shall be deemed null and void.
4. Blake and Blake Genealogists, Inc. is further authorized to act as my agent in order to process any funds due me regarding this matter.
5. This agreement shall apply only to the matter at hand, the particulars of which Blake and Blake Genealogists, Inc. will disclose to me upon the execution of this agreement.
Dated this 3rd day of June 1997
/s/ Sean Berrigan
Sean Berrigan
Beagh, Creagh
Ballinasloe, Co. Roscommon
Dsb, Exhibit A.

[4] Again, it must be emphasized that N.J.S.A. 46:30B-106 applies only to funds which have been or would have been reported under the Uniform Unclaimed Property Act. There is no suggestion in this record that such an abandonment was contemplated by the administratrix.
[5] The court is concerned, however, with defense counsel's apparent dual role in this matter. While describing itself as counsel "for the heirs" it seems that defense counsel is also representing the interests of the genealogical firm in connection with the dispute raised by the administratrix herein. The interests of the genealogical firm and the heirs, however, are not aligned on the issue raised. In order to insure that those heirs are apprised of this matter, defense counsel is directed to forward a copy of this Opinion to all 35 heirs within 10 days.